This document was signed electronically on September 30, 2016, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: September 30, 2016



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | Case No. 15-51790 |
| JAMES WILLIAM REED and NAOMI M. ) | |
| REED, ) | Chapter 7 |
| ) | |
| Debtors. ) | Adversary Proceeding No. 15-5131 |
| ) | |
| _____ ) | |
| ) | |
| ) | Judge Alan M. Koschik |
| JAMES WILLIAM REED and NAOMI M. ) | |
| REED, ) | |
| ) | **MEMORANDUM DECISION ON** |
| Plaintiffs, ) | **DEFENDANT NAVIENT SOLUTIONS,** |
| ) | **INC.'S MOTION TO DISMISS COUNTS** |
| v. ) | **TWO AND THREE FOR LACK OF** |
| ) | **SUBJECT MATTER JURISDICTION** |
| DEBORAH ZWICK, et al., ) | |
| ) | |
| Defendants. ) | |

Now before the Court is the motion ("Motion") to dismiss counts two and three of the

complaint ("Complaint") of Debtor-Plaintiffs James M. Reed and Naomi M. Reed ("Debtors" or

"Plaintiffs") for lack of subject matter jurisdiction, filed by defendant Navient Solutions, Inc. ("Navient") in the above-captioned adversary proceeding. For the reasons set forth herein, Navient's motion to dismiss will be denied.

## JURISDICTION AND VENUE

The question of this Court's jurisdiction over this adversary proceeding is central to the pending Motion. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## FACTUAL AND PROCEDURAL HISTORY

The facts relevant to the question of the Court's subject-matter jurisdiction over Counts Two and Three of the Debtors' Complaint are all matters of record before the Court.

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 23, 2015. In their Schedule F, a form in which debtors list their unsecured creditors, they disclosed numerous student loans, including two owed to Navient in amounts of $21,956.00 and $16,175.00 ("Navient Loans").[1] The Navient Loans were not scheduled as contingent, unliquidated, or disputed, nor were any of Debtors' other student loans or student loan collection accounts. Debtors later amended their Schedule F, discussed below.

Debtors filed this adversary proceeding on December 11, 2015, to determine the dischargeability of their student loan debts. In addition to Navient, Debtors named JP Morgan Chase, Transworld Systems, Inc., Wells Fargo, National Collegiate Student Loan Trust, and Javitch Block LLC as defendant creditors on various student loans or related collection accounts. Finally, Debtors named their daughter, Deborah Elaine Zwick ("Zwick"), as a defendant.

---

[1] Some of the other student loans on their Schedule F may also be Navient Loans; the record is insufficiently developed on this point and the Court makes no findings of fact on that issue at this time. The remaining student loans appearing in the Debtors' Schedule F were owed to other defendants named in this adversary proceeding, some of whom have either been dismissed or who have stipulated to judgment.

2

Debtors' Complaint includes three counts. Count One asks the Court to render a finding of undue hardship pursuant to 11 U.S.C. § 523(a)(8), thereby excepting each student loan debt from discharge. Counts Two and Three are less traditional, however. Count Two alleges that the student loan obligation was obtained by actual fraud perpetrated on the Debtors by a third party. The Debtors allege that, unknown to them, Defendant Zwick, their daughter and the student whose education was financed by the Navient Loans and other loans, forged their names as co-signatory on the student loan documents. Count Three alleges that the student loan debts are unconscionable as a result of their fraudulent origins. The Debtors contend that it is unconscionable and inconsistent with the purposes of the Bankruptcy Code and related statutes to exclude fraudulently created student loan obligations from discharge. (Compl. ¶ 36.) In essence, the Debtors raise defenses to the purported student loan debts themselves, seeking their disallowance both against their estate and against them.

Debtors assert that the entire Complaint is both within this court's jurisdiction under 28 U.S.C. § 1334 and is a core proceeding under 28 U.S.C. § 157. (Compl. ¶¶ 3-4.)

On December 18, 2015, after Debtors filed their Complaint but before Navient filed its answer or the Motion, the appointed chapter 7 trustee in the underlying case filed her report of no distribution, reporting that there was no property available for distribution from the estate over and above amounts exempt by law and that the estate had been fully administered. The Court entered an order of discharge for the Debtors on December 21, 2015. Because the trustee reported that this was a no-asset case, the trustee never caused notices to be sent to creditors requesting that they file proofs of claim in the underlying case.

Navient filed its answer to the Complaint on January 12, 2016. That answer admits the jurisdiction of this Court and the core proceeding nature of this proceeding solely on the issue of

undue hardship, but denies that this Court has subject-matter jurisdiction over "any claims unrelated to 11 U.S.C. § 523(a)(8)." (Ans. ¶ 3.)

On February 29, 2016, Debtors amended their Schedule F to reflect that the Navient Loans and all of Debtors' other student loans are disputed.

On April 7, 2016, Navient filed the instant Motion, reiterating and expanding upon the jurisdictional position staked out in its answer: that the Court has subject-matter jurisdiction over Count One and the determination of the undue hardship issue presented therein, but not over the fraud and unconscionability issues presented in Counts Two and Three of the Complaint. (*E.g.*, Ans. ¶¶ 5-6.) Navient argues that "[t]here is no cause of action under Title 11 for a debtor's claim for discharge against a creditor based on fraud on the debtor by a third party," nor "for a debtor's claim for discharge against a creditor based on unconscionability." (Mot. 2.) Navient argues that fraud and unconscionability most closely resemble common law claims, not Bankuptcy Code statutory claims, and that this Court therefore lacks subject-matter jurisdiction to adjudicate them.

Debtors filed their response brief on April 29, 2016. Debtors argue that "Counts Two and Three are 'core' proceedings because they related directly to the dischargeability of the debt," and determinations as to the dischargeability of debts are core proceedings. (Br. in Opp. 2.) Debtors somewhat curiously focus their response brief overwhelmingly on the core/non-core distinction and not whether the Court has subject-matter jurisdiction in the first place.

Navient filed its reply on May 6, 2016. Navient responds that Plaintiffs' claims under Counts Two and Three are non-core, and in fact, not even "related to" the Plaintiffs' bankruptcy case, because the underlying bankruptcy case is a no-asset chapter 7 case and the resolution of

4

Counts Two and Three will therefore "not affect the amount of property to be received by, or distributed by, the bankruptcy estate, or the allocation of property among creditors." (Reply 4.)

The Court took the matter under advisement at the close of briefing.

**LEGAL ANALYSIS**

A substantial amount of the briefing in this matter has been directed at the secondary question of whether this matter is core or non-core rather than the central threshold question of whether the Court has jurisdiction to adjudicate Counts Two and Three at all. The determination of whether Counts Two and Three are core or noncore is irrelevant to the determination of whether those counts should be dismissed pursuant to Rule 12(b)(1); even if the claims were noncore, the Court may still have jurisdiction to hear them, albeit without authority to enter final orders unless the parties consent. 28 U.S.C. § 157(c)(1)-(2); General Order No. 2012-7 of the U.S. District Court, Northern District of Ohio; *see also Wellness International Network, Ltd. v. Sharif*, ___ U.S. ___, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015).

In this case, however, because both parties raise the issue of core versus noncore proceeding in their briefs, and because the Court "shall determine, on the judge's own motion or timely motion of a party, whether a proceeding is a core proceeding," 28 U.S.C. § 157(b)(3), the Court here addresses both whether it has subject-matter jurisdiction over all three counts of the Complaint, and also whether each count of the Complaint is a core proceeding.

**A.    Bankruptcy Jurisdiction Pursuant to 28 U.S.C. § 1334**

Federal district courts have original and exclusive jurisdiction of all bankruptcy cases filed under title 11. 28 U.S.C. § 1334(a). In addition, except as provided in 28 U.S.C. § 1334(e)(2) or other acts of Congress that confer exclusive jurisdiction on a court or courts other than the district courts, federal district courts have "original but not exclusive jurisdiction of all

5

civil proceedings under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

For the purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between whether a proceeding is one "arising under," "arising in," or "related to" a case under title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, for purposes of determining Section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. *Michigan Employment Security Commission. v. Wolverine Radio Company, Inc. (In re Wolverine Radio Company)*, 930 F.2d 1132, 1141 (6th Cir. 1991) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)).

*Wolverine Radio* noted that circuit courts, including the Sixth Circuit, "have uniformly adopted an expansive definition of a related proceeding under 1334(b)." *Id.* at 1141.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 1142 (quoting *In re Pacor, Inc.,* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original; citations omitted). The Sixth Circuit later held similarly that, at least for addressing the extent of jurisdiction over civil proceedings "related to" cases under title 11,

> In addressing the extent of a district court's bankruptcy jurisdiction under Section 1334(b) over civil proceedings "related to" cases under title 11, we start with the premise that the "emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *In re Salem,* 783 F.2d at 634. Although "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement" of Section 1334(b), *Robinson v. Mich.*

6

> *Consol. Gas Co., Inc.,* 918 F.2d 579, 584 (6th Cir.1990), Congressional intent was "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (citations omitted).

*In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996).

Navient argues that the Debtors' state law defenses to the validity of the student loan debts actually will *not* have any effect on the estate being administered in bankruptcy, because this case is a no-asset chapter 7 case. Because the estate has no assets to distribute, Navient reasons, the claims will not affect the amount of property to be received by or distributed by the Trustee, nor the allocation of property among creditors. (Br. In Supp. 4.) Navient concludes that the lack of an economic impact on the estate in this case denies the Court even "related to" jurisdiction.

However, this argument proves too much. Under this rule, the bankruptcy court could never have jurisdiction to adjudicate any nondischargeability actions at all, because such actions determine only the extent of the discharge, not the distribution of property from the estate. A creditor holding an allowed claim for a dischargeable general unsecured debt and a creditor holding an allowed claim for a nondischargeable general unsecured debt are both entitled to the same *pro rata* share of any estate assets available for distribution to general unsecured creditors, so the dischargeability determination does not affect the assets to be distributed. Yet such actions are clearly within the jurisdiction of the bankruptcy court, as even Navient admits in admitting that Count One is within the bankruptcy court's jurisdiction. "[T]he 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

7

Indeed, Counts Two and Three are broader than simple theories of dischargeability, because these allegations, if proven, would constitute valid grounds on which to object to the allowance of the disputed debts as claims against the estate as well as the debtor.  Because they dispute the validity of the underlying debts themselves, Counts Two and Three are substantively objections to scheduled-but-unfiled claims at least as much as they are theories of dischargeability.  While Debtors framed the issues of fraud and unconscionability in their pleadings as issues of dischargeability, the fact that they amended their schedules in the main case to reflect that the student loan obligations are disputed suggests that they are aware that they are substantively contesting the debt itself, not simply contesting the dischargeability or nondischargeability of an admitted debt.

The question thus turns to whether the Court has jurisdiction to hear such an objection under 28 U.S.C. § 1334 and *Wolverine Radio* in a no-asset chapter 7 case.

A debtor is expressly permitted to lodge an objection to claim as part of an adversary proceeding.  Fed. R. Bankr. P. 3007(b).  The question is therefore whether there is even a "claim" by Navient to which the debtors can object.

Because this is a no-asset chapter 7 case, Navient has not filed a proof of claim, nor is it under any obligation or economic incentive to do so.  Pursuant to Bankruptcy Rule 2002(e), the appointed chapter 7 panel trustee in this case issued a notice that there were no assets from which a dividend could be paid and that it was unnecessary (though not forbidden) to file claims.  Pursuant to Bankruptcy Rule 3002(c)(5), once the trustee issued such a notice, all creditors would be entitled to a fresh period in which to file claims if payment of a dividend were to later appear possible.  Until such time, the obligation of creditors under Bankruptcy Rule 3002(a) to file a proof of claim in order for such claim to be allowed is suspended or tolled.

However, even when a chapter 7 bankruptcy estate has no assets, an estate still exists. There is no asterisk in the foundational provision of 11 U.S.C. § 541(a) ("The commencement of a case under section 301, 302, or 303 of [the Bankruptcy Code] creates an estate.") that excepts estates that have no assets after exemptions. There always remains the possibility that nonexempt assets will be discovered in the future and that the trustee will move to reopen the case to administer those assets under 11 U.S.C. § 350(b). Similarly, even when the estate has no assets, claims against it still exist, even without the filing of a proof of claim. *Claims* and *proofs of claim* are not the same thing. A *claim* is recognized by the Bankruptcy Code itself, defined, in relevant part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). A *proof of claim* is a creation of the Federal Rules of Bankruptcy Procedure, not the Bankruptcy Code, and is simply "a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). Therefore, even without any proof of claim, Navient still harbors a claim against the estate as well as against the Debtors.

As such, whether characterized as theories of dischargeability or of objection to claim, the counts of the Complaint which form the basis for Debtors' objection to Navient's claim are clearly at least "related to," if not "arising in," this bankruptcy case and therefore fall within the jurisdiction of the Court pursuant to 28 U.S.C. § 1334(b). The Court's adjudication of those counts will affect the estate, empty though it may currently be. Those portions of the Complaint may also affect the extent of the Debtors' discharge, if they do not separately prove undue hardship as a standalone basis for discharging the disputed debts regardless of their validity. The Court's determination of the extent of Debtors' debt to Navient is "integral to the restructuring of debtor-creditor relations," *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 (1989), and at

9

the very least, Debtors' Counts Two and Three have significantly more than just a "tenuous connection" to the estate, in the language of *Dow Corning*. *Id.* at 489.

The Debtors here assert "disallowance claims challeng[ing] the validity of debts that [the creditor] has sought to enforce." *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012). Notwithstanding the fact that there is a state-law basis for the alleged disallowance, the federal courts have jurisdiction over these claims. *Id*. Moreover, disallowance is directly related to dischargeability, the question that is foremost in the Debtors' minds and a question over which the district court, and by reference the bankruptcy court, has clear jurisdiction. As observed by the Bankruptcy Appellate Panel of the Eighth Circuit in another case involving disallowance of a claim on unconscionability grounds, the "bankruptcy court properly determined that [the creditor] had no [nondischargeability] action under Bankruptcy Code § 523 because the Debtor owes no debt to [the creditor]. . . . For § 523(a) to apply in the first instance, there must be a debt." *In re Walker: Wilson v. Walker*, 528 B.R. 418, 428 (B.A.P. 8th Cir. 2015).

Therefore, this Court has subject-matter jurisdiction over Counts Two and Three of the Debtors' Complaint, along with the conceded jurisdiction over Count I.

**B.      Constitutional Authority Under *Stern v. Marshall* and its Progeny**

Having resolved the question of whether the Court has statutory jurisdiction to hear all three counts of the Complaint, the Court turns next to whether Counts Two and Three are within the Court's constitutional authority to enter a final judgment. In *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011), the Supreme Court held that bankruptcy courts "lack[] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503. In so ruling, the Court expressly rejected the argument that the creditor's decision to file a proof of claim in that

10

case affected the nature of the counterclaim and, thus, the bankruptcy court's constitutional authority to hear it. *Id.* at 495 The debtor's claim, whether procedurally poised as a standalone claim or a counterclaim against a party filing a proof of claim against the estate, was "one at common law that simply attempts to augment the bankruptcy estate—the very type of claim that [the Court] held in *Northern Pipeline*[2] and *Granfinanciera*[3] must be decided by an Article III court." *Id.*. This was determined to be so notwithstanding the fact that 28 U.S.C. § 157(b)(2)(C) classifies counterclaims by the estate to be core proceedings. The Supreme Court thereby carved out the possibility of statutorily-core, but constitutionally-noncore, claims -- so-called *Stern* claims.

    Navient argues that this precedent applies here with respect to Counts Two and Three.

    It is clear that the fraud and unconscionability arguments raised against Navient's claim will turn on the resolution of state law issues. However, that alone does not render this Court constitutionally impotent to enter a final judgment on such claims. Nearly every proceeding to allow or disallow a claim against a debtor and her estate in bankruptcy will turn on state law issues. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *Stern* did not abrogate this, and in fact cited it approvingly as part and parcel of its discussion of why it was immaterial whether the nondebtor counterclaim defendant had also filed a proof of claim in the bankruptcy case. *Stern,* 564 U.S. at 495.

---

[2] *Northern Pipeline Constr. Co v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

[3] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.E.2d 26 (1989).

Navient also cites *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), in support of its argument that the state law claims in Debtor's Complaint are beyond the constitutional authority of the bankruptcy court to enter a final judgment. However, that case actually supports the conclusion that the bankruptcy court *does* have the constitutional authority to enter final judgment as to the allowance or disallowance of a claim, even one based, as almost all are, on rights existing under state law.

*Waldman* drew a distinction between a debtor seeking to disallow a creditor's claim against him and the debtor seeking to recover damages from the creditor on an affirmative legal claim. *Waldman*, in contrast to its ruling regarding core authority to enter judgment on claims *against* the debtor, held that the bankruptcy court lacked constitutional authority to enter final judgment on affirmative state law counterclaims seeking to recover damages, even against a creditor that had filed a claim.

In *Waldman*, the debtor, Stone, brought a number of claims against creditor-defendant Waldman based on previous business dealings in which Waldman, with the assistance of Stone's own attorney, defrauded Stone out of his business ownership. The Sixth Circuit divided the claims into two broad categories: (1) "disallowance claims," which included counts demanding disallowance of a judgment against Stone that Waldman had purchased from Fifth Third Bank, and the discharge of a judgment lien on his property and a mortgage on his residence; and (2) "affirmative claims," including damages and specific performance to remedy the breach of promises made in the course of selling Stone's business, as well as related fraud claims. The Sixth Circuit held that the bankruptcy court had authority to enter final judgment on the disallowance claims, even though the creditor had not yet filed a proof of claim in the bankruptcy proceedings. *Id.* at 920. The Sixth Circuit noted, distinguishing *Granfinanciera*, that

12

"the *Granfinanciera* defendants were not creditors at all; they had no interest in the bankruptcy proceeding and had been hauled into court against their will." *Id.* (citing *Granfinanciera* at 36-37).

The Sixth Circuit concluded:

> All that said, we recognize that the Supreme Court has never squarely decided whether Article III allows a bankruptcy court to enter judgment on a debtor's objections to a creditor's proof of claim. But neither has the Court ever intimated that Article III bars a bankruptcy court from performing this function—"which is of basic importance in the administration of the bankruptcy estate[.]" *Katchen [v. Landy]*, 382 U.S. [323,] 329, 86 S.Ct. 467 [(1966)] (internal quotation marks omitted). All the intimations instead point the other way: in *Northern Pipeline*, for example, the Court said that this function—"the core of the federal bankruptcy power"—"may well be" a matter of public right. 458 U.S. at 71, 102 S.Ct. 2858 (plurality opinion). And in *Stern,* the Court explained its result in that case, and in prior ones, partly by reference to whether the claims were practically subsumed in the claims-allowance process. 131 S.Ct. at 2617. We do not read the Court's precedents to require the bankruptcy courts to abandon this power, which they have exercised for more than two centuries. *See* Act of Apr. 4, 1800, ch. 19, 2 Stat. 19 (repealed 1803) (creating the first federal bankruptcy courts). We therefore hold that the bankruptcy court here was authorized to enter final judgment on Stone's disallowance claims.

*Waldman* at 920-21. The Sixth Circuit proceeded to distinguish the disallowance claims from the affirmative claims, holding that the latter "were not a part of [the debtor's] effort to restructure his relations with his creditors in bankruptcy; rather they only sought money damages to augment the bankruptcy estate," *id.* at 921, and "required him to prove facts beyond those necessary to his disallowance claims." *Id.*

In this case, Counts Two and Three seek no affirmative relief from Navient—neither money damages nor specific performance. The debtors here seek only a ruling on the validity, extent, and dischargeability of any obligations they may have as debtors to a prepetition creditor. That is not merely within the power of the bankruptcy courts, it is their *raison d'être*—"the core of the federal bankruptcy power," in the language of *Waldman* and *Northern Pipeline*.

13

Second, even if Counts Two and Three were beyond the constitutional power of this court to adjudicate, dismissal of this action pursuant to a motion under Rule 12(b)(1) would still not be the correct course of action. When a bankruptcy court, pursuant to *Stern*, cannot constitutionally enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits the bankruptcy court to treat the claim as non-core and issue proposed findings of fact and conclusions of law for *de novo* review and entry of judgment by the district court. *See Executive Benefits Ins. Agency v. Arkison*, ___ U.S. ___, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014).

C.   **Core Status Pursuant to 28 U.S.C. § 157**

The Court turns finally to whether or not there is statutory authority for the Court to hear this matter as a core proceeding and enter final judgment, or whether it may only hear it as a noncore proceeding and limit itself to submitting proposed findings of fact and conclusions of law to the district court.

"Determinations as to the dischargeability of particular debts" are core matters pursuant to 28 U.S.C. § 157(b)(2)(I), and even Navient does not dispute this, disputing only whether Counts Two and Three are in fact such claims. As discussed above, it is actually true that they do not fit neatly into that category, since Counts Two and Three would serve to invalidate the claim against the estate and debtor alike, whereas the dischargeability determination focuses on the post-discharge fate of the debtor and is generally agnostic as to whether the claim remains valid against the estate. However, before a Court may determine whether a claim is nondischargeable pursuant to Section 523(a), including Section 523(a)(8) governing student loan debts, the Court must first determine whether there even is a debt. *Walker*, 528 B.R. at 428. As a result, the validity of the debt is central to the nondischargeability question.

14

Moreover, "allowance or disallowance of claims against the estate" are also core proceedings under 28 U.S.C § 157(b)(2)(B), as are "other proceedings affecting … the adjustment of the debtor-creditor … relationship," which these are, "except personal injury tort or wrongful death claims," which these are not, pursuant to 28 U.S.C. § 157(b)(2)(O). As already discussed above, the fundamental matters of debt restructuring and discharge are at the core of the federal bankruptcy power; therefore, ruling on Counts Two and Three as part of allowing or disallowing Navient's claim against the debtors, absent any demand for affirmative relief against Navient, is inherently a core proceeding.

## CONCLUSION

The Court has subject-matter jurisdiction over all counts in the Complaint under 28 U.S.C. § 1334(b). Moreover, it was not beyond the constitutional authority of Congress to give this Court jurisdiction to adjudicate each of those counts and enter final orders thereon for the purpose of determining the validity and extent of the asserted debtor-creditor relationship between the Debtors and Navient. The Debtors have not brought claims for affirmative relief that would be beyond the authority of any non-Article III federal court to hear, and even if they had, the proper remedy would not be dismissal of this action pursuant to a motion under Federal Rule of Civil Procedure 12(b)(1); it would be to require this Court to hear those issues only in a noncore capacity and enter proposed findings of fact and conclusions of law for the consideration of the district court.

The Court will enter a separate order denying Navient's Motion to Dismiss consistent with this Memorandum Decision. Judgment on the Motion to Dismiss will not be deemed entered until the separate order has been docketed by the Clerk.

# # #